IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| DONVORNE ROBERTSON, | 3:24-cv-00027-WPK |
| Plaintiff, | |
| vs. | ORDER ON PARTIAL MOTION TO DISMISS/RENEWED PARTIAL MOTION TO DISMISS |
| IOWA MEDICAL CLASSIFICATION CENTER; DEREK RICKELS, ASSOCIATE WARDEN OF SECURITY; AND IOWA DEPARTMENT OF CORRECTIONS, | |
| Defendants. | |

Before the Court is Defendants' Partial Motion to Dismiss/Renewed Partial Motion to Dismiss, filed on July 15 and September 12, 2024, respectively. ECF 9, 23. Defendants argue Counts II and III should be dismissed for lack of subject matter jurisdiction. Plaintiff filed Resistances on July 16 and September 23, 2024. ECF 10, 27. Defendants filed a Reply to his first Resistance on July 19, 2024. ECF 11. Plaintiff filed a "Response to Defendants' Reply" on July 22, 2024. ECF 12. For the reasons set forth herein, Defendants' Motions are GRANTED.

## I.  BACKGROUND FACTS AND PROCEEDINGS.

Plaintiff was hired on September 6, 2022, with Defendant Iowa Medical and Classification Center (IMCC), which is part of Defendant Iowa Department of Corrections (IDOC), as a Correctional Officer. ECF 1 at 44. He was terminated on October 27, 2022. *Id.* at 5, 44, 71. Plaintiff alleges Defendant Associate Warden of Security at IMCC Derek Rickels accused him of having "gang involvement" and an improper conversation with an inmate in violation of the IDOC policies. *Id.* at 5, 45, 48. He asked to see the evidence of an investigation into this matter and

Rickels did not present him any such information. Defendants contend Plaintiff was terminated for violation of IDOC General Rules of Employee Conduct: Section IV(E) on Personal Ethics, Paragraphs 1 and 2; and Section IV(F) on Information and Communication, Paragraphs 5 and 7. ECF 1 at 71, 74, 76.

On the date of his termination on October 27, 2022, Plaintiff filed an internal complaint with the Iowa Department of Administrative Services (DAS) alleging discrimination. *Id.* at 9-11, 46-49. On December 9, 2022, he filed a complaint with the Iowa Civil Rights Commission (ICRC), who cross-filed the complaint with the U.S. Equal Employment Opportunity Commission (EEOC). *Id.* at 42-45, 95. In the ICRC complaint he alleged he was discriminatorily terminated by the IDOC based on his race, skin color, and sex. *Id.* at 42-45, 59-61. Defendants responded to Plaintiff's ICRC complaint on January 20, 2023. *Id.* at 63, 65-85. They allege they included confidential records for the ICRC's review at Exhibits 4 and 4A. Based on such, Defendants requested and received a Protective Order from the ICRC. *Id.* at 87, 89, 92. The request for the protective order states the information they were providing included "confidential surveillance video, offender phone records, emails, and images." *Id.* at 87. The Protective Order states the information will remain sealed and access allowed only by consent of IDOC or "an order of an administrative law judge or district court judge." *Id.* at 89. As such, none of this information is considered in ruling on Defendants' Motion. On February 7, 2023, Plaintiff requested an administrative release, or right-to-sue letter, from the ICRC and EEOC. *Id.* at 55. The ICRC issued its administrative release on March 17, 2023, informing Plaintiff that he had the right to commence an action in state district court within 90 days. *Id.* at 41, 94, 97.

Plaintiff admits he did not bring either a state or federal complaint within 90 days of the March 17, 2023 right-to-sue letter from the ICRC. ECF 10 at 2. However, he alleges the EEOC

reached out to him in September 2023 to inform him they would be taking over the investigation of his civil rights complaint against Defendants. *Id*. On January 30, 2024, the EEOC issued Plaintiff a Notice of Right to Sue, stating he had 90 days to institute a civil action against Defendants in the appropriate court under Title VII of the Civil Rights Act of 1964. ECF 1 at 12. In February 2024 DAS finally began to address Plaintiff's complaints. *Id*. at 14-20. Plaintiff alleges DAS closed the complaint on May 21, 2024, and those findings were only sent to IDOC, so he was not aware of the outcome.  ECF 10 at 1, ECF 1 at 38.

On March 20, 2024, Plaintiff filed his Complaint pro se with this Court against IMCC, Derek Rickles, and IDOC, along with a Motion to Proceed In Forma Pauperis (IFP). ECF 1, 2. The District Judge granted his IFP Motion on April 3, 2024. ECF 3. In his Complaint, Plaintiff alleged that he was terminated from the IMCC based on his race and color in violation of Title VII of the Civil Rights Act of 1964 (Count I).  ECF 1 at 3-5. He also alleged Wrongful Termination (Count II), and Defamation of Character by Slander and Libel (Count III), under Iowa state law. *Id*. at 3.

On July 15, 2024, Defendants filed a Partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). ECF 9.  They alleged the Court lacks subject matter jurisdiction over Counts II and III, based on sovereign immunity from suit under the Iowa Tort Claims Act (ITCA) and the Eleventh Amendment of the United States Constitution. They also allege the Court lacks subject matter jurisdiction based on Plaintiff's failure to exhaust administrative remedies, and thus these Counts should be dismissed. *Id*. They do not seek to dismiss Count I for employment discrimination under Title VII. Plaintiff filed a Resistance on July 16, 2024, alleging he had exhausted all administrative remedies, timely filed his Complaint, and his claims of Defamation and Wrongful Termination in Counts II and III are "supportive claims" for his Title VII discrimination claim in Count I and therefore should be taken into consideration "at the same time

and by the same court system." ECF 10 at 1.  Defendants filed a Reply on July 19, 2024, arguing that even if Plaintiff intended to file his Wrongful Termination and Defamation claims also under federal common law, Defendants are still immune from suit under the Eleventh Amendment. ECF 11. Plaintiff filed a "Response to Defendants' Reply" on July 22, 2024. ECF 12. He argued that under Federal Rule of Civil Procedure 8(a) there is a liberal pleading standard, and he met that standard to provide a short and plain statement of the claim showing entitlement to relief. *Id.* at 2. Plaintiff further alleged sovereign immunity did not apply to claims brought under federal law, and he was bringing the defamation and wrongful discharge claims under federal law. *Id.* Thus, he alleged federal law, specifically Title VII, provides the jurisdictional basis for these claims and abrogates state immunity. *Id.* Finally, he alleged the Iowa Civil Rights Act (ICRA) and ITCA provided waivers of immunity for his state law claim for wrongful termination.  *Id.* at 2.

Plaintiff filed an Amended Complaint on September 4, 2024, adding a request for a jury trial. ECF 22. Defendants then filed a Renewed Partial Motion to Dismiss in which they referenced their original Motion and incorporated all of their arguments from their first Motion into the Renewed Motion. ECF 23. As such, the Court is addressing the Motions jointly. Defendants also filed an Answer on September 16, 2024. ECF 25. Plaintiff filed a Resistance to the Renewed Motion, and a Reply to the Answer on September 23 and 24, 2024, respectively. ECF 27, 28. He reiterated his arguments from his prior Resistance and Reply, including that he exhausted all administrative remedies by filing internally with Defendants, DAS, the EEOC, and the ICRC, exhausted all state-level appeals with Defendant IDOC and "other relevant state agencies," and received right-to-sue letters from both the ICRC and EEOC. ECF 10, 12, 27.

The Court held a hearing on the Partial Motion to Dismiss and other matters on September 25, 2024. ECF 24, 30, 31. At hearing, Plaintiff again argued he was filing his Wrongful

Termination and Defamation claims under both state and federal law. Defendants again responded that even if the Court were to allow Plaintiff to allege these claims under federal common law, Defendants would still have sovereign immunity under the Eleventh Amendment.

As such, despite the fact Plaintiff clearly indicated on his Complaint Form that these were being brought under "Relevant state law," because Defendants have had an opportunity to respond the Court will address Plaintiff's Defamation and Wrongful Termination claims as brought under both Iowa law and federal law. ECF 1 at 3.

## II.  LEGAL STANDARDS ON MOTIONS TO DISMISS.

Defendants move to dismiss Counts II (Wrongful Termination) and III (Defamation of Character) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) based on sovereign immunity or, in the alternative, failure to exhaust administrative remedies.

Rule 12(b)(1) allows a party to argue, by motion, that jurisdiction is lacking in a given case. Jurisdiction is a threshold inquiry in every federal case. *Roberson v. Harris,* 393 F.2d 123, 124 (8th Cir. 1968). "The burden of proving subject matter jurisdiction falls on the plaintiff." *V S Ltd. P'ship v. Dept. of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). The moving party may bring the jurisdictional challenge based on the "'face [of the Complaint] or on the factual truthfulness of [the claim's] averments.'" *Aviva Life and Annuity Co. v. Davis*, 20 F.Supp.3d 694, 698 n.5 (S.D. Iowa May 19, 2014) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993)). Given a facial challenge, "the Court must treat the motion under Rule 12(b)(1) similar to how it treats motions under Rule 12(b)(6) for failure to state a claim. This means the Court must find the moving party successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id*. (internal citations and quotations omitted). However, when a factual challenge is

raised, "the Court [is allowed] to go beyond the Complaint with regard to what facts it can consider when deciding whether it has jurisdiction." *Id*. (citing *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). Given a factual challenge, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," meaning that "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Osborn*, 918 F.2d at 730.

Defendants do not designate whether their Rule 12(b)(1) challenge as "facial" or "factual." *See* ECFs 9, 11, 23. However, they do not seek to introduce any evidence outside the record. Moreover, their Rule 12(b)(1) argument turns on whether Plaintiff's Complaint on its face falls within this Court's jurisdiction. Therefore, the Court will consider it as a facial challenge to the Court's subject matter jurisdiction. *See Middlebrooks v. United States*, 8 F. Supp. 3d 1169, 1174 (D.S.D. 2014).

When a challenge to subject matter jurisdiction is facial, the plaintiff is entitled to Rule 12(b)(6) "safeguards" that require the Court to "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). In applying these "safeguards" to a facial challenge, "the 'court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Illig v. Union Elec. Co*., 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). Materials "embraced by the pleadings" include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Rossi v. Arch Ins. Co.*,

60 F.4th 1189, 1193 (8th Cir. 2023) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)). Accordingly, the Court will accept the facts alleged in the Complaint as true and draw all reasonable inference in favor of Plaintiff. Plaintiff attached over 90 pages of documentation to his Complaint, and the Court has properly considered all of these documents in determining this facial challenge. *Illig*, 652 F.3d at 976.

### III.    MERITS.

Defendants first contend Counts II and III must be dismissed based on the doctrine of sovereign immunity. "Sovereign immunity is a jurisdictional doctrine," and thus motions to dismiss based on sovereign immunity are governed by Federal Rule of Civil Procedure 12(b)(1). *Brown v. United States*, 151 F.3d 800, 803 (8th Cir. 1998). The burden of proof is somewhat unclear. The Eighth Circuit has recognized, in dicta, that "all of our sister circuits to address the issue have recognized that an entity asserting Eleventh Amendment immunity bears the burden of showing its entitlement to such immunity." *United States ex rel. Fields v. Bi-State Dev. Agency of the Mo.-Ill. Metro. Dist*., 829 F.3d 598, 600 (8th Cir. 2016). The Eighth Circuit has also held, however, that "the party invoking federal jurisdiction [in a case involving sovereign immunity] must prove jurisdictional facts by a preponderance of the evidence." *Moss v. United States,* 895 F.3d 1091, 1097 (8th Cir. 2018). *See also V S Ltd. P'ship*, 235 F.3d at 1112 ("The burden of proving subject matter jurisdiction falls on the plaintiff."). The Court will harmonize this precedent by imposing the overall burden on Defendants to establish its entitlement to sovereign immunity, while imposing the burden on Plaintiff to prove individual disputed facts by a preponderance of the evidence.

### A.  Iowa Law.

The doctrine of sovereign immunity originally prohibited any tort claims against the State of Iowa. *Hansen v. State,* 298 N.W.2d 263, 265 (Iowa 1980). Court's lacked jurisdiction over tort actions against the State or its agencies. *Lloyd v. State,* 251 N.W.2d at 551, 555 (Iowa 1977). In 1965 Iowa enacted the ITCA. This Act waived the State's sovereign immunity for certain tort claims against the State of Iowa, now found in Iowa Code chapter 669. *Id.* Only those torts committed by State employees acting within the scope of their state employment are governed by the ITCA. *Godfrey v. State,* 847 N.W.2d 578, 588 (Iowa 2014).

Here, the IDOC is a state agency and IMCC is part of the IDOC. Thus, the ITCA applies to both of them. The only individually named Defendant is Rickels. However, Plaintiff does not allege Rickels was at any time acting outside the scope of his employment with the State of Iowa. Thus, Rickels's conduct also falls within the ITCA. *Nunley v. Erdmann,* No. C14-4016-MWB, 2014 WL 5020253, at *6 (N.D. Iowa Oct. 8, 2014), *report and recommendation adopted*, No. C 14-4016-MWB, 2014 WL 7345780 (N.D. Iowa Dec. 23, 2014) (citing *Dickerson v. Mertz,* 547 N.W.2d 208, 212 (Iowa 1996) (holding that various tort claims against state employees fell within the ambit of the ITCA because plaintiff failed to allege they were acting outside the scope of employment)). Therefore, the Court concludes that Plaintiff can pursue his claims here only to the extent, if any, permitted by the ITCA.

Any tort claim against the State of Iowa "must first be presented to the State Appeal Board pursuant to the procedures detailed in Iowa Code chapter 669, Iowa's Tort Claims Act." *Matter of Est. of Voss*, 553 N.W.2d 878, 880 (Iowa 1996) (citing *Swanger v. State,* 445 N.W.2d 344, 346 (Iowa 1989)).

> "One of the most prominent" limitations on the State's tort liability is the ITCA's requirement that claimants must comply with an administrative claims process "before proceedings may be initiated in court against the state." *Rivera v. Woodward Res. Ctr.*, 830 N.W.2d 724, 727 (Iowa 2013). We describe this

> requirement "as an 'administrative remedy' that must be exhausted." *McFadden v. Dep't of Transp.*, 877 N.W.2d 119, 122 (Iowa 2016) (quoting *Schneider v. State*, 789 N.W.2d 138, 145 (Iowa 2010)). Exhaustion of the administrative claims process is "a condition precedent to the right to resort to the courts." *Charles Gabus Ford, Inc. v. Iowa State Highway Comm'n*, 224 N.W.2d 639, 648 (Iowa 1974). Indeed, "[e]xhaustion of the administrative process is jurisdictional, and a suit commenced without complying with this process is subject to dismissal." *Swanger*, 445 N.W.2d at 347.

*Anderson v. State*, 2 N.W.3d 807, 813 (Iowa 2024). The first step in the administrative claims' process is presentment of a claim. *Id.*; *Voss*, 553 N.W.2d at 880. "Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction." *Id.*

"Iowa Code section 669.3(2) states: 'A claim made under this chapter shall be filed with the director of the department of management . . . .'" *Anderson,* 2 N.W.3d at 813. *See also Rivera v. Woodward Res. Ctr.*, 830 N.W.2d a724, 727 (Iowa 2013) (finding that under this Code provision, the ITCA's administrative "scheme requires the claimant to first file a claim with the director of the department of management.").

> The director of the department of management, then, brings the matter before the State Appeal Board, which is comprised of the director of the department of management, the state auditor, and the state treasurer. *McFadden*, 877 N.W.2d at 121 & n.2 (citing Iowa Code § 669.3(2); *id.* § 73A.1). And section 669.3(3) requires the State Appeal Board to "adopt rules and procedures for the handling, processing, and investigation of claims, in accordance with chapter 17A." Iowa Code § 669.3(3). "Pursuant to its rule-making authority, the state appeal board has prescribed the form and content of tort claims." *Swanger*, 445 N.W.2d at 350. When a claim meets those form and content requirements, it is properly presented.
> . . .
> Once a claim is presented, the attorney general has six months in which to review the claim and make a final disposition. *Rivera*, 830 N.W.2d at 728; *accord* Iowa Code § 669.5(1). The claimant is not permitted to file a lawsuit during that six-month period. *See Rivera*, 830 N.W.2d at 728. But "[i]f the attorney general has not made a final determination within six months, the claimant may withdraw the claim and proceed to bring a lawsuit in district court without a final disposition." *Id.*

*Anderson*, 2 N.W.3d at 813-14.

Here, Plaintiff did file with the EEOC, DAS, and the ICRC. However, specifically regarding allegations of tort claims such as Plaintiff's claims for Defamation and Wrongful Termination, the ITCA requires the claims first be filed with the Director of the Iowa Department of Management. Iowa Code § 669.3(2). It is undisputed Plaintiff did not file his claims against the State-Actor Defendants with the director of the department of management as required under Iowa Code section 669.3 in order to exhaust his administrative remedies. Plaintiff's failure to properly present his claims under the ITCA and to exhaust his administrative remedies is jurisdictional and deprives this Court of subject matter jurisdiction over these claims. *Id.* at 813. Accordingly, the Court concludes that Plaintiff's state tort claims for Defamation (Count II) and Wrongful Termination (Count III) must be dismissed for lack of subject matter jurisdiction. *Swanger*, 445 N.W.2d at 347.

Additionally, Iowa specifically retained its sovereign immunity based on several exceptions set forth in Iowa Code section 669.14. These include any "claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander,* misrepresentation, deceit, or interference with contract rights." Iowa Code § 669.14(4) (emphasis added). "Under Iowa law, defamation is either written (libel) or spoken (slander)." *Betz v. Fed. Home Loan Bank of Des Moines*, 549 F. Supp. 3d 951, 960 (S.D. Iowa 2021) (citing *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996)). Therefore, the Court concludes that Plaintiff's state Defamation claim is also specifically barred under the ITCA.

**B. Federal Common Law.**

As set forth above, because Defendants had an opportunity to respond to Plaintiff's allegation that he intended to bring Count's II and III under both state and federal law, the Court will address the claims under federal law as well. Plaintiff argues that these Counts are based on

federal law because they "support" his employment discrimination claim under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. It is true that courts have determined

Congress intended to waive states' sovereign immunity by enacting Title VII.

> The Eighth Circuit Court of Appeals recognizes that Title VII, through Section 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity. In *Maitland v. University of Minn.*, 260 F.3d 959, 964 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976), "ultimately concluded that the State's Eleventh Amendment immunity was abrogated by Title VII, which was enacted under Section 5 of the Fourteenth Amendment, and that the [plaintiffs therein] were permitted to recover . . . from the State."

*Krei v. Nebraska*, 446 F. Supp. 3d 499, 505 (D. Neb. 2020). However, here Defendants have not

sought to dismiss Plaintiff's Title VII claim and thus such claim is going forward at this point. To

the extent Plaintiff is simply alleging facts relating to defamation and wrongful termination to

support elements of, or damages in, his Title VII claim, such facts can be raised in his Title VII

claim. However, the facts such allegations may support in his Title VII claim does not support

stand-alone claims of defamation or wrongful termination.

Plaintiff has not cited any federal statutes other than Title VII that he alleges have been

violated based on his claims of defamation and wrongful termination. "[F]ederal common law is

used as a 'necessary expedient' when Congress has not 'spoken to a particular issue.'" *County of

Oneida v. Oneida Indian Nation of N.Y. State,* 470 U.S. 226, 237 (1985) (quoting *Milwaukee v.

Illinois*, 451 U.S. 304, 313-14 (1981) (*Milwaukee II*)). "[F]ederal common law is subject to the

paramount authority of Congress," and thus only "resorted to in the  absence of an applicable Act

of Congress." *Milwaukee II*, 451 U.S. at 313-14 (internal citation and quotations omitted). Thus,

because Plaintiff has not alleged a violation of any Act of Congress (i.e. a federal statute) other

than Title VII with regard to his claims of defamation and wrongful termination, the only way

these claims could be asserted as stand-alone claims would be as federal common law claims.

Presuming without deciding there even is a cognizable federal common law claim for wrongful termination, the Court will address these two claims as federal common law claims.

"'Sovereign immunity is the privilege of the sovereign not to be sued without its consent.'" *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)). "The Eleventh Amendment is 'one particular exemplification of that immunity.'" *Id.* (quoting *Fed. Mar. Comm'n v. S. C. State Ports Auth.*, 535 U.S. 743, 753 (2002)). The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. Amend. XI. "Although the language of the Eleventh Amendment 'expressly encompasses only suits brought against a State by citizens of another State,' the Supreme Court 'long ago held that the Amendment bars suits against a State by citizens of that same State as well.'" *Filyaw v. Corsi*, No. 4:24CV3108, 2024 WL 4135877, at *6 (D. Neb. Sept. 9, 2024) (quoting *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Even beyond the Eleventh Amendment, the doctrine of sovereign immunity represents the longstanding principle that nonconsenting states cannot be subjected to private suit for money damages under federal law unless Congress has validly abrogated that constitutional immunity. *See S. C. State Ports Auth.*, 535 U.S. at 754; *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.").

"A state may be subject to suit where (1) the state has *unequivocally waived* its sovereign immunity and consented to suit in federal court; or (2) Congress has *unequivocally, through legislation*, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment." *Krei,* 446 F. Supp. 3d at 510 (emphasis added) (citing *Kentucky v. Graham,* 473

U.S. 159, 169 (1985)).[1] As set forth above, federal common law claims arise only when Congress

has *not* spoken on an issue. *See County of Oneida,* 470 U.S. at 237; *Milwaukee II,* 451 U.S. at 313-

14. Therefore, it is axiomatic that no alleged common-law cause of action could abrogate the State

of Iowa's sovereign immunity through enacted legislation because such causes of action come

about only when Congress *does not* act through legislation. Thus, because Congress has not

enacted legislation to unequivocally abrogate Iowa's immunity for federal common law claims of

defamation and wrongful termination,  Defendants cannot be subject to suit in federal court based

on this ground. *See Krei,* 446 F. Supp. 3d at 510.

      Second, the Court finds no evidence whatsoever here that the State of Iowa has in any way

unequivocally waived its sovereign immunity and consented to suit in federal court for federal

common law claims of defamation or wrongful termination. *Id.* To the contrary, the Iowa

Legislature has expressly stated it will not waive its sovereign immunity regarding claims for

defamation. Iowa Code § 669.14(4). Thus, Defendants are likewise not subject to suit in federal

court based on this ground.

      The Court concludes the U.S. Congress has not abrogated Iowa's state immunity for federal

common law claims of defamation or any possible common law claim for wrongful termination,

nor has the State of Iowa unequivocally waived it sovereign immunity for such causes of action.

Defendants are therefore immune from suit for both of these claims under the Eleventh Amended

of the United States Constitution. Accordingly, this Court does not have subject matter jurisdiction

---

[1] The Court acknowledges that *Ex parte Young* provides a limited exception to a state's general immunity from suit by permitting lawsuits against state officials in their official capacity when the relief sought is both equitable and prospective. *Ex parte Young,* 209 U.S. 123, 167-68 (1908). Here, Plaintiff is not asking for equitable or prospective relief, only monetary relief for alleged past damages. ECF 1 at 6. Accordingly, the *Ex parte Young* exception does not apply here.

over Plaintiff's claims for Defamation (Count II) or Wrongful Termination (Count II) under federal common law and such claims must be dismissed on this ground as well.

## IV. CONCLUSION.

For all of the reasons set forth above, the Court concludes it lacks subject matter jurisdiction over Counts II and III based on Plaintiff's failure to exhaust administrative remedies and Defendants' sovereign immunity from suit under both the Iowa Tort Claims Act and the Eleventh Amendment of the United States Constitution. Accordingly, Count II for Defamation and Count III for Wrongful Termination are **DISMISSED with prejudice** in their entirety under both state and federal law. Defendants' Partial Motion to Dismiss/Renewed Partial Motion to Dismiss is **GRANTED.**

**IT IS SO ORDERED.**

Dated December 12, 2024.

_____
William P. Kelly
U.S. Magistrate Judge